IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RIGBERTO SIGARAN, *et al.*, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-12-3588 |
| US BANK NATIONAL ASSOCIATION, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a suit to stop a home foreclosure. Rigberto[1] and Gloria Sigaran sued the U.S. Bank National Association for violating § 50(a)(6) of the Texas Constitution and the federal Truth in Lending Act (TILA); to quiet title; and for fraud, trespass to title, and equitable estoppel. The Sigarans sought a declaratory judgment that U.S. Bank's lien against the Sigarans' property is void and that U.S. Bank lacks authority to foreclose. They also sought to enjoin U.S. Bank from foreclosing, and to recover damages and attorney's fees. U.S. Bank moved to dismiss the Sigarans' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Based on the pleadings; the motion, response, and reply; and the relevant law, U.S. Bank's motion to dismiss, (Docket Entry No. 2), is granted. The Sigarans' claims are dismissed with prejudice and without leave to amend. Final judgment is separately entered.

The reasons for these rulings are set out below.

**I.    Background**

---

[1] The pleadings and briefs refer to the plaintiff as "Rigberto," but the mortgage documents attached to the complaint use the spelling "Rigoberto."

On April 5, 2006, the Sigarans borrowed $120,000 from Silverlakes Mortgage and executed a promissory note and deed of trust. The deed of trust named the Mortgage Electronic Registration Systems, Inc. (MERS) as "beneficiary" and "nominee" for Silverlakes and its successors and assigns. (Docket Entry No. 1-2, Ex. B). The loan was sold to a mortgage-backed Trust, CSAB Mortgage-Back Pass-Through Certificates, Series 2006-3 (CSAB 2006-3). The Sigarans allege that CSAB 2006-3 is a New York common law asset-backed trust. The Trust prospectus supplement and pooling and servicing agreement (PSA) named U.S. Bank as the Trustee and Wells Fargo Bank as the Trust administrator. The Trust had a "closing date" of October 30, 2006. The Sigarans' mortgage was required to be transferred to U.S. Bank, as trustee, by that date. (*Id*., Ex. C).

On August 30, 2008, after the Trust's closing date, MERS executed an assignment of the note and deed of trust to U.S. Bank. (*Id*., Ex. D). The assignment was made by Selim Taherzadeh, who the Sigarans allege was an attorney for U.S. Bank and Wells Fargo. The assignment stated that Taherzadeh also had power of attorney to make an assignment on MERS's behalf. The Sigarans allege that there is no recorded document giving Taherzadeh power of attorney.

The Sigarans filed suit in Texas state court, and U.S. Bank timely removed.

## II.     The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368,

372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). A district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend after the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

**III.    Discussion**

### A. The Claims to Quiet Title and for Trespass to Title and the Request for Declaratory Relief

The Sigarans contend that U.S. Bank lacked authority to foreclose on their home on the ground that the 2008 assignment of the note and deed of trust was ineffective. They seek to quiet title on their home and a declaratory judgment that U.S. Bank lacked a valid lien and authority to foreclose. The Sigarans argue that the assignment of the note and deed of trust is void because it was executed after the Trust's closing date. They contend that the PSA required all rights and interests in the mortgage loans to be conveyed to the Trust before that date. The Sigarans also allege that U.S. Bank "side-stepped" the securitization process because there is no record of assignments to the seller or depositor designated by the PSA.

"A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Hous. [1 Dist.] 2012), no pet. h). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Hous. [1 Dist.] 2009, pet. denied) (citation omitted). A suit to quiet title aims to "declare invalid or ineffective the defendant's claim to title." *Essex Crane*, 371 S.W.3d at 388 (citations omitted). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. "The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove." *Id.* The Sigarans assert a trespass to try title claim based on the same set of facts. "A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001. A party alleging a trespass to title claim must: "(1) prove a regular chain of conveyances from the sovereign, (2) establish

superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

U.S. Bank responds that the Sigarans lack standing to challenge the assignments of the note and deed of trust.[2] It points to decisions by Texas courts stating that "assignments are contracts that are only enforceable by parties to the contract." *Hazzard v. Bank of Am. NA*, 2012 WL 2339313, at *3 (S.D. Tex. June 19, 2012) (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam)). In *Tri-Cities Constr. Inc. V. Am. Nat'l Ins. Co.*, 523 S.W.2d 426 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ.), the court distinguished between assignments that are void and those that are voidable, holding that only the latter are subject to challenge by an obligor:

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not pay the same claim twice.

*Id.* at 430; *see also Tyler v. Bank of America, N.A.*, 2013 WL 1821754, at *5 (W.D. Tex. Apr. 29, 2013) (holding that a mortgagor has standing to attack an assignment that is void but not one that is voidable). A void contract is "invalid or unlawful from its inception," while a voidable contract "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." 17A C.J.S. CONTRACTS § 169.

---

[2] The Sigarans contend that U.S. Bank improperly advanced a standing argument under Rule 12(b)(6), instead of Rule 12(b)(1). They point out that Rule 12(b)(6) permits a party to assert a defense based on the failure to state a claim upon which relief can be granted, and that Rule 12(b)(1) is the appropriate rule for challenges to subject-matter jurisdiction. U.S. Bank's argument that the Sigarans lack standing to challenge the assignment is based not on constitutional standing but on whether the legal provisions "on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

5

The Sigarans allege that the Trust is a New York asset-backed trust. New York law provides that "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. EST. POWERS & TRUSTS LAW § 7–2.4. Despite New York law's use of the term "void," courts applying New York law have treated *ultra vires* actions by trustees as voidable and capable of ratification. *See Mooney v. Madden*, 193 A.D.2d 933, 933–34 (N.Y. App. Div. 1993) ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement."); *Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC*, 981 N.E. 2d 1, 8–10 (Ill. App. Ct. 2012) (collecting cases); *see also Richmond Printing v. Port of Houston Authority*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("As a general rule, void contracts cannot be ratified."). Because assignments made after the Trust's closing date are voidable, rather than void, the Sigarans lack authority to challenge the assignment of their mortgage to U.S. Bank.[3]

The Sigarans' contention that the assignment of the note and deed of trust to U.S. Bank was ineffective under the PSA also fails because a written assignment was not necessary to transfer an interest in the Sigarans' mortgage to the Trust. In *Colton v. U.S. Nat. Bank Ass'n*, 2013 WL 1934560 (N.D. Tex. May 10, 2013), the court considered claims identical to those asserted here: "that the assignment of the note and deed of trust from MERS to U.S. Bank, as trustee, is void because it did not comply with the PSA." *Id.* at *2. The court assumed, without deciding, that the plaintiff had standing to challenge the foreclosure based on the validity of the assignment. *Id.* The

---

[3] The Sigarans also argue that they have standing to contest U.S. Bank's authority to foreclose under the Declaratory Judgment Act. But "the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (internal citation omitted).

court found that the trust's PSA and prospectus did not require MERS-registered loans to be conveyed to the trustee for the benefit of the trust using a written assignment. The trust document required only that the transfers be noted in the MERS system.

As in *Colton*, the Trust documents at issue in this case permitted the interest in the Sigarans' loan to be transferred to the Trust without written assignments using the MERS system.[4] The PSA requires, "[i]n connection with the transfer and assignment" of the mortgage from the depositor to the trustee, certain "documents and instruments with respect to each Mortgage Loan assigned" to be "delivered to the Custodian." *Id.* § 2.01(b). For non-MERS loans, "the original Mortgage, with evidence of recording thereon, or copies certified by the related recording office" must be delivered, *Id.* § 2.01(b)(iii), as well as "the original Assignment of Mortgage, in recordable form, for each Mortgage Loan from the last assignee assigned in blank," *Id.* § 2.01(b)(v), and "the originals of any intervening recorded Assignments of Mortgage, showing a complete chain of assignment from origination to the last assignee, including warehousing assignments, with evidence of recording thereon . . . ," *Id.* § 2.01(b)(vi). For MERS loans, however, the depositor need only deliver "the original Mortgage, noting the presence of the [Mortgage Identification Number] of the related Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan . . . or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded." *Id.* § 2.01(b)(iii). The PSA defines a MOM loan as "[a]ny Mortgage Loan as to which MERS is acting as mortgagee,

---

[4] The trust's PSA was filed with the Securities and Exchange Commission (SEC). *See* CSAB Mortgage-Backed Trust 2006-3, Current Report (Form 8-K), Ex. 4.1 (Nov. 14, 2006), available at http://www.sec.gov/Archives/edgar/data/1378535/000116231806001517/m1166psa41.htm. "[A] court may also take judicial notice of documents in the public record, including documents filed with the [SEC], and may consider such documents in determining a motion to dismiss." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005).

solely as nominee for the originator of such Mortgage Loan and its successors and assigns." *Id.* art. I. The Sigarans' loan is a MOM loan because their deed of trust states that MERS is the mortgagee, as nominee for Silverlake, the original lender, and its successors and assigns. As a MOM loan, the depositor was required to deliver only the original mortgage document to the Trustee. In place of requiring evidence of a chain of written assignments, the PSA provides that:

> [I]n connection with the assignment of any MERS Mortgage Loan, the related Servicer agrees that it will cause, at the Seller's direction and expense, the MERS® System to indicate that such Mortgage Loans have been assigned by the Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders and the Certificate Insurer by including (or deleting, in the case of Mortgage Loans which are repurchased or substituted in accordance with this Agreement) the information required by the MERS® System to (a) identify the Trustee and (b) identify the series of the Certificates issued in connection with such Mortgage Loans. The related Servicer shall report to the Depositor, the Certificate Insurer and the Custodian the status of updating all applicable assignments with MERS within 60 days of the Closing Date and shall confirm in writing to the applicable Custodian and the Certificate Insurer (which may be furnished electronically) once all assignments are updated with MERS.

*Id.* § 2.01. The Trust prospectus supplement further explains that, "in lieu of providing the duly executed assignment of the mortgage to the trustee and the original recorded assignment or assignments of the mortgage together with all interim recorded assignments of the mortgage, the depositor may at its discretion provide evidence that the related mortgage is held through the MERS® System." (Docket Entry No. 1-2, Ex. C). For MERS-recorded loans that are transferred to the trust, "MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan." (*Id.*). The Sigarans have not stated any facts supporting an inference that MERS failed to

use the MERS system to convey the interest in the Sigarans' mortgage to U.S. Bank by the Trust closing date, as the PSA required.

The Sigarans allege that the 2008 assignment is invalid because it was executed by Selim Taherzadeh, an attorney for U.S. Bank and Wells Fargo, and not by the mortgagee, MERS. The Sigarans acknowledge that the assignment states that Taherzadeh had power of attorney to make an assignment on behalf of MERS. They argue, however, that because the power of attorney was not recorded, Taherzadeh lacked authority to assign the note and deed of trust on MERS's behalf. The Sigarans also argue that the August 30, 2008 assignment was not evidenced by recorded documents proving sale or showing that consideration was paid for the assignment.

Because the PSA permitted the Sigarans' mortgage to be conveyed to U.S. Bank using the MERS system, the Sigarans' challenge to the validity of the 2008 assignment is irrelevant. The Sigarans have not also not pleaded any facts supporting an inference that the 2008 assignment was invalid. The Sigarans do not point to any statutory or other legal authority requiring a power of attorney, proof of sale, or evidence of consideration to be recorded. Other courts applying Texas law have held that no such requirements exist. *See Gillespie v. BAC Home Loans Servicing, LP*, 2013 WL 646383, at *6 (N.D. Tex. Feb. 21, 2013) ("BAC was not required to record a power of attorney for the assignment of the note or the appointment, and any claim based on the argument that recording was required must fail."); *see also Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010) ("The failure to record the deed of trust in the real property records of Harris County when the loan was originally made, or to record the assignment of the deed of trust when it was executed, and the foreclosure before the assignment was recorded, do not as a matter of law give rise to a wrongful foreclosure claim."). Nor does Taherzadeh's status as an attorney for U.S. Bank with authority to make an assignment on MERS's behalf suggest wrongdoing. "MERS

generally relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Howard v. JP Morgan Chase NA*, 2013 WL 1694659, at *8 (W.D. Tex. Apr. 18, 2013); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011) ("[M]ost of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans.").

The Sigarans also allege that the Trust is a real estate mortgage investment conduit (REMIC) and that it violated the federal legal requirements for such entities. A REMIC is a tax-exempt entity created by the federal tax code. *See* 26 U.S.C. § 860A(a) ("[A] REMIC shall not be subject to taxation under this subtitle (and shall not be treated as a corporation, partnership, or trust for purposes of this subtitle)." (internal parentheses in original)). Instead, REMIC income is directly "taxable to the holders of interests in such REMIC." *Id.* § 860A(b). The Sigarans argue that the 2008 assignment of their mortgage by MERS to U.S. Bank violated the federal requirement that all assets, including qualified mortgages, be conveyed to the REMIC within three months of its "startup day." *See Id.* § 860D(a)(4) (requiring a REMIC to include "as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments."); *Id.* § 860G(a)(3)(A)(ii) (stating that a mortgage is "qualified" if it "is purchased by the REMIC within the 3-month period beginning on the startup day if, except as provided in regulations, such purchase is pursuant to a fixed-price contract in effect on the startup day . . . .").

The Sigarans' challenge to the 2008 assignment as contrary to federal tax law fails for the same reasons as their argument that the assignment violated the PSA and New York trust law. The Sigarans have not pleaded any facts suggesting that the interest in the mortgage was conveyed to U.S. Bank after the three-month window provided in the REMIC statute. As explained above, the

10

trust documents provide for the Sigarans' mortgage loan to be transferred to the Trust through the MERS system. No written assignment was required. And even if the transfer of the Sigarans' mortgage violated federal requirements for REMICs, the consequence would be limited to loss of tax-exempt status. Nothing in the federal provisions governing REMICs suggests that a mortgage assignment made after the three-month window invalidates the assignment, dissolves a trust created under state law, or gives rise to a private right of action..

The Sigarans allege that although MERS was named as nominee for Silverlake and its successors in the deed of trust, MERS is not named in the note. The Sigarans contend that if the holder of the deed of trust does not also hold the note, then the holder lacks authority to foreclose. "Texas differentiates between enforcement of a note and foreclosure—the latter enforces a deed of trust, rather than the underlying note, and can be accomplished without judicial supervision." *Martins v. BAC Home Loans Servicing, L.P.*, 2013 WL 1777487, at *2 (5th Cir. Apr. 26, 2013). U.S. Bank need not hold the note in order to exercise its authority to foreclose. It is sufficient that "the mortgage was assigned by MERS, which had been given such power, including the power to foreclose, by the deed of trust." *Id.*[5]

The Sigarans' quiet-title and trespass-to-title claims and request for declaratory relief are dismissed. Because the Sigarans lack authority to challenge the assignment of the note and deed of trust by MERS to U.S. Bank and because their challenge under the federal tax code fails as a matter of law, these claims are dismissed with prejudice and without leave to amend.

---

[5] Several courts applying Texas law have held that "a transfer of an obligation secured by a note also transfers the note." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012) ("Although [the mortgagor's] note containing the express right to transfer did not identify MERS, [the mortgagor's] deed of trust did identify MERS, and because the note and deed of trust must be read together when evaluating their provisions, MERS had the authority to assign the note and the deed of trust."). Under this view, MERS's authority to assign the deed of trust also made it competent to assign the note.

11

B.     **The Claims Under the Texas Constitution**

The Sigarans also argue that Silverlakes, their original mortgagee, violated the Texas Constitution by: making a loan exceeding 80 percent of the home's fair market value, TEX. CONST. art. XVI, § 50(a)(6)(B); failing to close the mortgage at an office of a lender, attorney, or title company, *id.*, § 50(a)(6)(N); and because Silverlakes is not a bank, savings and loan association, savings bank, credit union, federally-chartered lending institution, person licensed to make loans, person who sold the homestead property to the current owner and provided the financing, relative of the homestead property, or a person regulated by the state as mortgage broker, *id.* § 50(a)(6)(P).

U.S. Bank argues that the Sigarans' claims under the Texas Constitution are barred by limitations. The Texas Constitution does not include a limitations period for claims under § 50(a)(6). Under Texas law, however, "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.051. U.S. Bank argues that this residual four-year limitations period applies to claims under § 50(a)(6) of the Texas Constitution. Because this lawsuit was filed more than four years after the Sigarans executed their mortgage, their claims would be barred by limitations.

The Sigarans respond that in *Smith v. JPMorgan Chase Bank, N.A.*, 825 F. Supp. 2d 859, 864 (S.D. Tex. 2011), *adhered to on reconsideration* 2012 WL 43627 (S.D. Tex. Jan. 9, 2012), another court in this district found that a mortgage lien that violates § 50(a)(6) is void and therefore not subject to limitations. District courts applying Texas law were divided over whether the four-year residual limitations period applies to § 50(a)(6) violations. *Compare, e.g.*, *Reagan v. U.S. Bank Nat'l Ass'n*, 2011 WL 4729845, at *3 (S.D. Tex. Oct. 6, 2011) (holding that a four-year limitations period applies), *with Smith*, 825 F. Supp. 2d at 864 (holding that the four-year limitations period

does not apply). But the Fifth Circuit Court of Appeals recently addressed this issue in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013). The court concluded that "a limitations period applies to constitutional infirmities under Section 50(a)(6)." *Id.* at 674. In doing so, the court specifically declined to follow the district court's reasoning in *Smith* that liens violating § 50(a)(6) are void. The Fifth Circuit explained that "[b]ecause a cure provision exists in Section 50(a)(6)(Q), liens that are contrary to the requirements of § 50(a) are voidable rather than void from the start." *Priester*, 708 F.3d at 675 n.4. This court is, of course, bound by the Fifth Circuit's decision.

The Sigarans also contend that their claims under the Texas Constitution are not barred because no limitations period applies to affirmative defenses. The Sigarans correctly point out that limitations statutes do not apply to defenses. *Hennigan v. Heights Sav. Ass'n*, 576 S.W.2d 126, 130 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). But the Sigarans' constitutional claims seek affirmative relief. The Sigarans' claims under the Texas Constitution are barred by limitations. Those claims are dismissed with prejudice and without leave to amend because amendment would be futile.

### C. The TILA Claim

The Sigarans allege that U.S. Bank violated TILA by failing to provide them with notice within 30 days of when their mortgage loan was transferred. The Sigarans seek damages and rescission of the loan under 15 U.S.C. §§ 1635(a) & (b) and 1640(a)(1). Title 15 U.S.C. § 1641g(1) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." The notice must include "the identity, address, telephone number of the new creditor"; "the date of transfer"; "how to reach an agent or party having authority to act on behalf of the new creditor"; "the location of the place where transfer of

ownership of the debt is recorded"; and "any other relevant information regarding the new creditor." *Id.* § 1641g(1)(A)–(E).

U.S. Bank argues that the Sigarans' TILA claim is barred by limitations. The Sigarans have not responded to U.S. Bank's limitations argument. Damage claims under TILA are subject to a one-year limitations period, *id.* § 1640(e), while claims seeking rescission are subject to a three-year limitations period, *id.* § 1635(f). The Sigarans allege that the Trust's closing date was October 30, 2006, and that the assignment to U.S. Bank occurred on August 30, 2008. Even assuming that the loan transfer did not occur until August 30, 2008, and that the three-year limitations period for rescission applies, the Sigarans' TILA claims would be barred by limitations. The Sigarans' TILA claim is dismissed with prejudice and without leave to amend because any amendment would be futile.

## D. The Fraud and Equitable Estoppel Claim Claims

The Sigarans allege that Silverlakes Mortgage committed fraud by relying on an appraisal that was more than the fair market value of the property, as stated in the Harris County Central Appraisal District's records. The Sigarans also argue, based on these same facts, that U.S. Bank should be equitably estopped from enforcing the loan agreements.

The Sigarans' complaint fails to state a claim for fraudulent misrepresentation under Texas law and does not meet the requirements of Federal Rule of Civil Procedure 9(b). The elements of the claim under Texas law are "(1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Rule 9(b) requires a complaint asserting a fraud claim to

"state with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted). The Sigarans do not allege who conducted the appraisal for Silverlakes Mortgage or what the appraiser estimated the Sigarans' home to be worth. They also fail to allege facts supporting an inference that the appraisal's valuation of the Sigarans' home overstated its actual fair market value. The Sigarans' complaint states that the 2006 Harris County Central Appraisal District estimated the value of the Sigarans' home at $109,360. But "it is generally held that the value placed upon real property for the purposes of taxation by assessment without participation of the landowner is not evidence of its value for purposes other than taxation." *Houston Lighting & Power Co. v. Fisher,* 559 S.W.2d 682, 686 (Tex. Civ. App.—Hou. [14th Dist.] 1977, writ ref'd n.r.e.); *see also Penrod v. Bank of New York Mellon*, 824 F. Supp. 2d 754 (S.D. Tex. 2011) (holding that a tax assessment is "relevant to valuation for taxation purposes only [and] . . . . does not establish market value."). The Sigarans do not state that they reasonably relied on the appraisal in securing a loan from Silverlakes. The Sigarans also do not plead facts suggesting that Silverlakes was aware that the mortgage appraisal overstated the property's value. An appraisal that is incorrect, but not intentionally so, is not sufficient to give rise to an inference of fraud.

U.S. Bank also argues that the Sigarans' fraud claims are barred by limitations. The Sigarans do not respond. Texas law applies a four-year limitations period to fraud claims. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). The alleged misrepresentation occurred no later than 2006, before the Sigarans executed their mortgage contract. The Sigarans' fraud claim is untimely and therefore dismissed with prejudice and without leave to amend. The equitable estoppel claim, which is based

on the same set of facts as their fraud claim and is not discussed in the opposition to the dismissal motion, is also dismissed with prejudice and without leave to amend.

**IV.    Conclusion**

For the reasons stated above, U.S. Bank's motion to dismiss, (Docket Entry No. 2), is granted. The Sigarans' claims are dismissed with prejudice and without leave to amend.

Final judgment is entered by separate order.

SIGNED on May 29, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge